# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KIERA BARBER,** | : | CIVIL ACTION NO. 1:14-CV-613 |
| | : | |
| **Plaintiff** | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **SUBWAY,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Presently before the court in the above-captioned action is the motion (Doc. 24) pursuant to Federal Rule of Civil Procedure 56(a) filed by defendant Subway ("Subway"). Subway seeks summary judgment with respect to all claims asserted by plaintiff Kiera Barber ("Barber"), a former employee, who alleges that Subway discriminated against her as a result of her disability, failed to accommodate her disability, and retaliated against her for requesting an accommodation, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. §§ 951-963. For the reasons that follow, the court will deny Subway's motion in its entirety.

I. **Factual Background and Procedural History**[1]

The instant matter concerns the employment of plaintiff Kiera Barber ("Barber") with defendant Subway, which both commenced and concluded in the summer of 2012. After filing an online application, Barber interviewed with Akash Patel ("Patel"), the owner of a Subway franchise located at the Colonial Park Mall in Harrisburg, Pennsylvania, for a position as a sandwich artist. (See Doc. 25 ¶ 3; Doc. 28 ¶ 3). During the interview, Patel advised Barber that a sandwich artist's duties include preparing sandwiches for and interacting with Subway customers.

---

[1] Local Rule 56.1 provides that "[a] motion for summary judgment filed pursuant to FED. R. CIV. P. 56 shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment shall file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement of material facts and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual information contained herein derives from the parties' Rule 56.1 statements. (See Docs. 25, 28). To the extent that facts are undisputed or supported by uncontroverted record evidence, the court cites directly to the parties' statements of material facts.

In response to Subway's Rule 56.1 statement, Barber filed an omnibus document containing both a response to Subway's statement of facts, (Doc. 28 at 4-6), and a separate counter-statement of material facts, (Doc. 28 at 1-4), the latter of which is non-responsive to Subway's statement and is neither contemplated nor permitted by the Local Rules. See LOCAL RULE OF COURT 56.1 (requiring movants to file a statement of facts and non-movants to file a statement "responding to the numbered paragraphs" of the movant's statement); see also Sash v. Hogsten, No. 07-cv-475, 2009 WL 249649, at *2 (M.D. Pa. Feb. 2, 2009) (Rambo, J.) (noting that Rule 56.1 "does not provide for a non-moving party to file his own statement of material facts but instructs the non-moving party how to properly respond to the movant's statement of material facts"). The court declines to consider the counter-statement of facts in the manner contemplated by Local Rule 56.1. Nonetheless, because Barber incorporates the counter-statement into her responsive statement and relies exclusively on the evidence cited therein in opposing Subway's motion, the court must utilize the document as a conduit to both access and navigate the record evidence upon which Barber relies. Unless otherwise noted, citations to "Doc. 28 ¶ __" herein refer to Barber's Rule 56.1 responsive statement of facts.

(See Doc. 25 ¶ 4; Doc. 28 ¶ 4). Barber informed Patel that she suffers from anxiety, and that she may need to take a break if an anxiety episode occurs during her shift. (See Doc. 25 ¶¶ 5-6; Doc. 28 ¶¶ 5-6). Patel responded by advising Barber that her requested accommodation "wasn't a problem." (Doc. 25 ¶ 7; Doc. 28 ¶ 7). Patel then asked Barber to submit medical documentation of her anxiety disorder, and Barber submitted medical documentation reflecting diagnoses of both anxiety and social phobia. (See Doc. 25 ¶¶ 8-9; Doc. 28 ¶¶ 8-9).

Barber began her training at Subway on May 30, 2012, and subsequently worked on May 31, June 2, and June 12. (Doc. 25 ¶ 13; Doc. 28 ¶ 13). During her June 12, 2012 shift, Barber suffered an anxiety attack while she was preparing a sandwich at the front of the store. (Doc. 25 ¶ 15; Doc. 28 ¶ 15). Barber went to the back of the store to attempt to control her symptoms. (See Doc. 25 ¶ 16; Doc. 28 ¶ 16). According to Barber's testimony, Patel followed her to the back of the store, inquired of her condition, and pressured her to return to work. (See Doc. 28 ¶ 17; see also Doc. 25 ¶ 17). Barber's condition did not improve, and she requested permission to leave early. (See Doc. 28 ¶¶ 18-19; see also Doc. 25 ¶¶ 18-19).

The parties' accounts of the events that followed diverge considerably. According to Barber, Patel responded to her request by stating: "I don't see any reason to keep training you if you're going to keep having anxiety attacks." (Doc. 28 (counter-statement) ¶ 26 (quoting Doc. 28-1, Ex. A, Barber Dep. 66:15-67:19, Dec. 5, 2014 (herein, "Barber Dep."))). Barber testified that Patel then "commanded" that she leave the store. (See id. ¶ 27). Barber also testified that Patel never told her that she was "fired" or "terminated," but that she perceived his order to leave as a

3

formal termination of her employment with Subway.  (See Doc. 25 ¶ 25; Doc. 28 ¶ 25).

According to Subway, Patel "accommodated [Barber's] request and allowed her to leave her shift early that day," but expected that she would return to work for her next scheduled shifts on June 14, June 15, and June 19, 2012.  (See Doc. 25 ¶¶ 19-23).  When Barber did not arrive for her scheduled shifts, and did not call off of work, Patel "concluded that [Barber] did not need the job and was not coming back to work."  (Id. ¶¶ 22-23).  The parties agree that Barber did not return to work after the June 12, 2012 incident.  (Doc. 25 ¶ 20; Doc. 28 ¶ 20).  Neither Barber nor Patel initiated communication with the other thereafter.  (See Doc. 25 ¶ 20; Doc. 28 ¶ 20; see also Doc. 28 (counter-statement) ¶¶ 31-32 (citing Barber Dep. 68:22-69:8)).

Barber commenced the instant matter with the filing of a complaint (Doc. 1) on March 31, 2014.[2]  Therein, Barber asserts claims for disability discrimination, retaliation, and failure to accommodate her disability in violation of the ADA and the PHRA.  On June 17, 2014, Subway filed its answer (Doc. 16), denying each of Barber's claims against it.[3]  After a period of discovery, Subway filed a motion (Doc.

---

[2] Barber avers—and Subway does not dispute—that she fully exhausted her administrative remedies by timely filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").  (See Doc. 1 ¶¶ 5-6).

[3] In its answer, Subway identifies three affirmative defenses: lack of subject matter and personal jurisdiction; failure to exhaust administrative remedies; and failure to state a claim for which relief may be granted.  (Doc. 17 ¶¶ 32-34).  Subway did not pursue any of these defenses via Rule 12(b)(1) or 12(b)(6) motion practice; nor does it pursue the jurisdictional or exhaustion defenses in its instant motion.  (See Docs. 24, 26).  Instead, Subway contends exclusively that Barber did not suffer an adverse employment action on June 12, 2012.  (See id.)

4

24) pursuant to Federal Rule of Civil Procedure 56(a). The motion is fully briefed, (see Docs. 26, 27, 29), and ripe for disposition.

## II. Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

## III. Discussion

Barber pursues three separate theories of liability against Subway arising from the June 12, 2012 incident: disability discrimination, failure to accommodate, and retaliation. Subway seeks summary judgment in its favor with regard to each of Barber's claims, contending that Barber did not suffer an adverse employment action but instead abandoned her position as a sandwich artist. (See Doc. 26 at 9-20). The court will utilize the Rule 56 record to measure each of Barber's claims against Subway's argument *seriatim*.

## A. Discrimination

The ADA, in its foundational prohibition, provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[4] 42 U.S.C. § 12112(a). To prevail on her claim of discrimination, Barber must establish that she (1) had a disability; (2) was qualified to perform her job, with or without reasonable accommodation(s); and (3) suffered an adverse employment action because of that disability. See Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006).[5]

---

[4] In 2008, the ADA Amendments Act ("ADAAA") expanded the scope of the inaugural statute, declaring that "[t]he definition of disability . . . shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of this Act." Pub. L. No. 110-325, § 4(a), 122 Stat. 3553, 3555. Because the events before the court occurred after January 1, 2009, the effective date of the ADAAA, the new standard governs Barber's claims. See Rocco v. Gordon Food Serv., 998 F. Supp. 2d 422, 428 (W.D. Pa. 2014). For purposes of the instant motion, Subway does not dispute that Barber is an individual with a disability under the ADAAA. (See Doc. 26 at 9-10).

[5] Employees bringing suit under the ADA may pursue claims under either of two theories: a direct evidence theory, or a circumstantial evidence theory. It is well-settled that the quality of proffered evidence determines whether an ADA claim is properly analyzed under the direct evidence "mixed motives" theory or the McDonnell Douglas burden-shifting paradigm applicable to circumstantial evidence cases. See Price Waterhouse v. Hopkins, 490 U.S. 228, 275-77 (1989) (O'Connor, J., concurring); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 269 (3d Cir. 2010); Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003); Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1095-96 (3d Cir. 1995). Subway's motion focuses exclusively on an element common to both standards—the requirement of an adverse employment decision in the first instance. (See Doc. 26 at 9-19). Accordingly, the court need not decide at this stage whether either or both standards will ultimately apply.

Subway assumes for purposes of its Rule 56 argument that Barber was qualified to perform the job of sandwich artist and that her anxiety disorder qualifies as a disability. (See Doc. 26 at 9-10). In its brief, Subway instead argues a singular and discrete point: that Barber was not terminated on June 12, 2012, and did not suffer an adverse employment action. (Id. at 10-17). Barber responds that she understood Patel's statements and conduct to mean that her employment with Subway was terminated effective June 12, 2012, and that a reasonable juror would agree. (See Doc. 27 at 8-12). Barber denies abandoning her employment. (See id.)

There is no dispute that termination is an adverse employment action under the ADA. See 42 U.S.C. § 12112(a) (prohibiting discrimination in regard to, *inter alia*, "discharge of employees"). If Subway in fact terminated Barber's employment on June 12, 2012, Barber suffered an "adverse employment action" for purposes of establishing that element of her discrimination claim. See id. The instant Rule 56 inquiry is thus narrowly defined, tasking the court to consider whether genuine disputes of material fact remain regarding the circumstances of Barber's separation from Subway. A cursory review of the record reveals marked disputes of material fact, answering the court's inquiry in the affirmative and precluding summary judgment in Subway's favor.

According to Barber's deposition testimony, on June 12, 2012, she suffered an anxiety attack during her shift at Subway and advised Patel that she needed to take a break. (Doc. 25 ¶ 15; Doc. 28 ¶ 15). Barber went to the back of the store "to deal with the symptoms," (Doc. 25 ¶ 16; Doc. 28 ¶ 16), and Patel became "frustrated" and "began to pressure [her] to go back to work," (Doc. 28 ¶ 16). Barber explained that

7

the attack was not resolving and requested Patel's permission to leave work early. (See Doc. 28 ¶ 18; see also Doc. 25 ¶ 18). Patel responded, "I don't see any reason to keep training you if you're going to keep having anxiety attacks." (Doc. 28 (counter-statement) ¶ 26 (quoting Barber Dep. 66:15-67:19)).[6] Patel then "commanded" that Barber leave the premises. (Id.; see also Barber Dep. 67:8-19 (testifying that Patel "demanded" and "commanded" that Barber leave)). According to Barber, "it wasn't like [Patel] was granting [her] permission to leave," rather, he was "actually commanding [her] to leave the store." (Barber Dep. 67:20-23). Neither Patel nor anyone else from Subway contacted Barber after that point. (See Doc. 28 (counter-statement) ¶ 31 (citing Barber Dep. 68:22-69:1)). Barber explained that she did not contact Subway or return to work because she believed Patel had fired her. (See id. ¶ 32).

Subway contends that, even assuming the truth of Barber's account, her "subjective belief" that her employment had been terminated is not sufficiently concrete evidence of an adverse employment action. (Doc. 26 at 9-17). Subway emphasizes that Patel never told Barber, expressly, that she was "terminated" or "fired." (Id. at 13). Subway identifies a number of district court decisions which it believes support the proposition that Barber's subjective belief that she was fired is

---

[6] Subway denies that Patel made any such statement. It asserts both that "Patel accommodated [Barber's] request and allowed her to leave her shift early that day," (Doc. 25 ¶ 19), and that Patel was not present at all on the day in question, (see Doc. 30 ¶ 23 (response to Barber's counter-statement)). This inconsistency in Subway's own position undergirds the court's determination *infra* that summary judgment is inappropriate. In any event, at this stage, the court must construe the record in Barber's favor, including crediting her description of the events of June 12, 2012 over Patel's account.

8

insufficient to satisfy her Rule 56 burden. (See id. at 9-12). Review of the case law cited by Subway reveals that each decision is materially distinguishable.

Subway first cites DiFlorio v. Kleckner, No. 11-4405, 2012 WL 748910 (E.D. Pa. Mar. 7, 2012), as support for its position that Patel's comments do not rise to the level of an adverse employment action.[7] DiFlorio's employer advised him during a telephone call that "things aren't working out" and suggested that he "just resign," at which point DiFlorio stopped reporting to work. Id. at *2-3. The court held that the employer's comments, in isolation, did not constitute an adverse employment action. See id. at *8-9 (observing that "[i]f . . . DiFlorio made no effort to return to work after this call, essentially abandoning his job, he has not suffered an adverse employment action"). Subway likens the employer's comments in DiFlorio to Patel's comments *sub judice*, implying that because Barber "made no effort to return to work" after June 12, 2012, she necessarily abandoned her employment. (Doc. 26 at 10-11). Subway's selective quotation from DiFlorio overlooks a critical contextual distinction: during the telephone call, DiFlorio was given an *option* rather than an *order*; although his employer suggested that he consider resigning, the choice of how to proceed remained at that point with DiFlorio. By contrast,

---

[7] The bulk of the case law Subway cites arose under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, not the ADA. Nonetheless, the Third Circuit has observed that when, as here, "there is no material difference in the question being addressed . . . , the methods and manner of proof under one statute should inform the standards under the others as well." Walton v. Mental Health Ass'n, 168 F.3d 661, 666-67 (3d Cir. 1999) (quoting Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 157 (3d Cir. 1995)). The requirement of an adverse employment action is a common thread among federal employment discrimination statutes, and decisions arising under the ADEA and Title VII thus offer helpful guidance.

9

Patel did not merely suggest that Barber resign; instead, he demanded that she leave the premises and stated that there was no point in continuing to train her.[8] (See Doc. 28 ¶¶ 17-18; see also Doc. 28 (counter-statement) ¶¶ 26-29 (citing Barber Dep. 67:23, 69:18-70:9)). DiFlorio is thus inapposite.

Subway next cites Ilori v. Carnegie Mellon University, 742 F. Supp. 2d 734 (W.D. Pa. 2010) and Riding v. Kaufmann's Department Store, 220 F. Supp. 2d 442 (W.D. Pa. 2002) as support for its position that no jury could find that the events of June 12, 2012 constituted a termination. (See Doc. 26 at 11-13). Ilori, a race-based discrimination case, involved an employee who resigned approximately five months after a meeting in which his employer warned that his "days . . . were numbered" and suggested that the employee should select a date to resign. See Ilori, 742 F. Supp. 2d at 743. The court held that the employer's "[e]ncouragement to resign" did not constitute an adverse employment action "because the threat was never carried out and had no demonstrable impact on plaintiff's employment." Id. at 760. Here, according to Barber's testimony, Patel's threatening statement was followed *immediately* by a purportedly forceful directive that Barber leave the premises.

---

[8] Indeed, the balance of the court's decision in DiFlorio aligns with the distinction drawn herein. The DiFlorio court went on to conclude that, because DiFlorio called his employer a number of times after the subject phone call, and his employer refused to place him on the schedule, DiFlorio had presented sufficient evidence of a termination for purposes of summary judgment. DiFlorio, 2012 WL 748910, at *9-10. In essence, the court held that DiFlorio did not suffer an adverse employment action until the moment when the ball was no longer in his court— when the employer refused to place him on the schedule and allow him to return to work. See id. at *9-10. Subway acknowledges DiFlorio's ultimate conclusion, but relies only on its holding that the telephone call, without more, did not constitute termination. (Doc. 26 at 10-11). Placed in context, DiFlorio undermines rather than supports Subway's position.

10

(See Doc. 28 ¶¶ 17-18; see also Doc. 28 (counter-statement) ¶¶ 26-29 (citing Barber Dep. 67:23, 69:18-70:9)). Accordingly, Ilori is factually distinguishable.

Subway's summary reliance on Riding is also unavailing. Subway cites Riding, a Title VII gender and pregnancy discrimination case, for its proposition that a plaintiff "could not establish that she suffered an adverse employment action when she 'walk[ed] away from the job . . . without clarifying any ambiguity about her expectations about that position by further inquiry or by returning to work and testing the waters.'" (Doc. 26 at 12 (quoting Riding, 220 F. Supp. 2d at 468)). This language, in Subway's view, implies that Barber's claim fails because she did not follow up with Subway to confirm her termination nor did she attempt to return to work thereafter. This selective quotation again ignores crucial context. First, Riding involved a job reassignment and constructive discharge claim, rather than an outright claim of discriminatory termination, and thus entailed a separate and wholly distinct legal analysis. See Riding, 220 F. Supp. 2d at 468 (quoting Connors v. Chrysler Fin. Corp., 160 F.3d 971, 975 (3d Cir. 1998)). Second, the court did *not* hold that a terminated employee must clarify whether she is terminated before bringing a discriminatory discharge claim; instead, the court observed that an employee asserting a constructive discharge claim must "explore alternatives before electing to resign." See id. Hence, Subway's reliance on Riding is misplaced.

Subway finds its closest analogy in Wilson v. Checkers Drive-In Restaurants, Inc., No. 12-5365, 2013 WL 2256133 (E.D. May 23, 2013), a Title VII retaliation and sexual harassment case, which it cites for the proposition that an employee did not

11

suffer an adverse employment action when she merely "thought" or "felt" that her employer had terminated her. (Doc. 26 at 12-13 (citing Wilson, 2013 WL 2256133, at *5)). During a telephone call, Wilson's supervisor "essentially told her that when she gives in to his sexual demands, he would give her hours." Wilson, 2013 WL 2256133, at *5. The court granted summary judgment to Wilson's employer as to her discriminatory discharge claim, concluding that Wilson presented no evidence other than "her own interpretation of [her supervisor's] comments, to show that her employment . . . was actually terminated" during the telephone call. Id. The court also observed that Wilson's "professed belief that she was terminated" was belied by the fact that she returned to the restaurant the very next day, and once more thereafter, to check her schedule. See id.

Patel's comments and actions *sub judice* convey an immediacy and finality that was lacking from the employer's comments in Wilson. Patel commanded Barber to leave the premises immediately following her anxiety attack, (Doc. 28 ¶¶ 17-19; also Doc. 28 (counter-statement) ¶ 27 (citing Barber Dep. 67:23, 69:18-70:9)), *and* told Barber that he saw no point in continuing her training, (Doc. 28 ¶ 19; also Doc. 28 (counter-statement) ¶ 26 (quoting Barber Dep. 66:15-67:19)). Barber knew that continued training was a requirement for the job. (Doc. 28 (counter-statement) ¶¶ 26, 29 (quoting Barber Dep. 68:6-21)). Moreover, despite Subway's position that Patel did not fire Barber, Patel never contacted Barber to ask whether or when she was returning to work. (See Doc. 28 (counter-statement) ¶¶ 31-32 (citing Barber Dep. 68:22-69:8)). Barber testified that she did not return to work or contact Patel

12

because she believed she had been fired.[9] (Doc. 25 ¶ 20; Doc. 28 ¶ 20). Barber's circumstances are thus distinct from Wilson, where no concrete commands were given and the employee's conduct flatly contradicted her asserted belief that her employment had been terminated. Cf. Wilson, 2013 WL 2256133, at *5.

The court finds that the record contains ample evidence from which a jury could reasonably conclude that Patel terminated Barber's employment immediately following her anxiety attack on June 12, 2012. To the extent Barber's account of the events of June 12, 2012 differs from Subway's, the court must construe the Rule 56 record in favor of Barber as the non-moving party. See Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005) ("On a motion for summary judgment, a district court must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor."); see, e.g., Burton v. Teleflex, Inc., 707 F.3d 417, 428-30 (3d Cir. 2013) (reversing district court's grant of summary judgment to employer in Title VII and ADEA case when parties disputed whether plaintiff resigned or was terminated and sufficient evidence supported both parties' interpretation of the circumstances surrounding plaintiff's

---

[9] In its reply brief, Subway avers that Barber called off of work on June 14, 2012, two days after her purported termination, disproving her professed belief that she had been terminated. (See Doc. 29 at 8). Subway further contends that Barber "has not denied" that she called off. (Id.) To the contrary, Barber *expressly* denies that she called off or had any contact with Patel or Subway after June 12, 2012, (see Doc. 28 ¶ 20), and the court must credit Barber's denial over Subway's cursory allegation at this stage. Moreover, Subway's support for this contention is tenuous at best. Its submissions again contain inconsistencies, stating first that Barber "never went back to work nor did she call anyone at Subway to let them know that she would not be available to work," (Doc. 25 ¶ 20), but later stating that Barber *did* call off of work two days later, (see Doc. 30 ¶ 19 (Subway's response to Barber's counter-statement of facts)). At this stage, the court must resolve this factual dispute in Barber's favor.

separation from Teleflex). An objective and reasonable juror could fairly construe Patel's words and actions as a termination of Barber's employment, and Barber's failure to return to work as proof of her belief that she was terminated. At this phase, it is not the court's role to weigh the parties' competing evidence or make credibility determinations. See Doe v. Luzerne Cty., 660 F.3d 169, 175 (3d Cir. 2011) ("The court may not . . . weigh the evidence or make credibility determinations. . . ." (quoting Pichler v. UNITE, 542 F.3d 380, 386 (3d Cir. 2008)). Subway's motion would have the court do both. Because the record is rife with genuine disputes of material fact, the court will deny Subway's motion as to this claim.

### B. Failure to Accommodate & Retaliation Claims

Barber also asserts failure to accommodate and retaliation claims against Subway arising out of the events of June 12, 2012. (See Doc. 1 ¶¶ 25-29). It is well-settled that adverse employment decisions under the ADA include an employer's failure or refusal to reasonably accommodate an individual's disability. See 42 U.S.C. § 12112(b)(5)(A) (providing that "the term 'discriminate against a qualified individual on the basis of disability' includes . . . not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability"); Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) ("Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities."). A failure to accommodate violates the ADA unless the employer "can demonstrate that the

accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A).

To prevail on a retaliation claim, Barber must prove that: (1) she engaged in a protected activity; (2) Subway subjected her to an adverse employment action; and (3) "a causal connection [existed] between" Barber's protected activity and the adverse employment action. Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759 (3d Cir. 2004) (quoting Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002)). Retaliation claims are distinct from discrimination claims in that they do not require a plaintiff to prove that he or she has an actual disability; rather, a plaintiff need only show that he or she requested an accommodation in good faith. See Shellenberger, 318 F.3d at 187. Protected activity "includes retaliation against an employee for requesting an accommodation." Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 188-89 (3d Cir. 2010) (citing Shellenberger, 318 F.3d at 191)).

As to both claims, Subway echoes its contention that Patel did not terminate Barber's employment on June 12, 2012, but rather granted her request to leave work early in the wake of an anxiety attack. (Doc. 26 at 17-19). Regarding Barber's failure to accommodate claim, Subway asserts that "Subway agreed to, and did in fact, accommodate [Barber's] request to take time off work in the event her anxiety occurred while she was working." (Doc. 26 at 17-19). As for Barber's retaliation claim, Subway maintains that she "has failed to present any evidence that Subway took any adverse action against her." (Id. at 19). Having already concluded that genuine disputes of material fact exist with respect to the events of June 12, 2012, see supra Section III(A), the court must reject Subway's argument.

15

Assuming the truth of Barber's account, and drawing all reasonable inferences therefrom, the record would permit a reasonable jury finding that (1) Subway failed to reasonably accommodate Barber's request for a break in the immediate wake of an anxiety attack and (2) Subway terminated Barber in direct response to her request for an accommodation. (See Doc. 28 ¶¶ 17-19; see also Doc. 28 (counter-statement) ¶¶ 26-27 (citing Barber Dep. 67:23, 69:18-70:9)). Because resolution of these claims, like Barber's discrimination claim, turns on manifest and material factual disputes, summary judgment as to either is inappropriate. The court will deny Subway's motion as to Barber's failure to accommodate and retaliation claims.

### C.  PHRA Claims

Barber's PHRA claims are properly analyzed under the same standard as her ADA claims.[10] See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) ("While the Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, the ADA, or the ADEA, . . . its courts nevertheless generally interpret the PHRA in accord with its federal counterparts."); see, e.g., Glanzman v. Metro. Mgmt. Corp., 391 F.3d 506, 509 n.2 (3d

---

[10] As noted *supra* at note 4, the ADAAA substantially altered the landscape of federal disability discrimination law and expanded the statute's definition of the term "disability." Pub. L. No. 110-325, § 4(a), 122 Stat. 3553, 3555. However, beyond the definition of disability—an issue which Subway concedes for purposes of Rule 56 motion practice—the PHRA analysis remains consistent with that of its federal counterparts. Hence, the court's analysis of Barber's federal claims applies with equal force to Barber's PHRA claim.

Cir. 2004) ("[T]he same legal standards and analysis are applicable to claims under both the ADEA and the PHRA."); Ripple v. Olympic Steel, Inc., No. 1:12-CV-2234, 2014 WL 509200, at *1 (M.D. Pa. Feb. 10, 2014) ("[O]ur analysis of Plaintiff's ADA claim applies with equal force to his PHRA claim.") (citing Kelly, 94 F.3d at 105). Accordingly, the foregoing analysis applies equally to Barber's PHRA claims. Because genuine disputes of material fact persist with respect to each of Barber's ADA claims, the court must also deny Subway's motion to the extent it seeks Rule 56 judgment as to Barber's PHRA claim.

IV. **Conclusion**

For the reasons stated herein, the court will deny Subway's motion (Doc. 24) for summary judgment.[11] An appropriate order shall issue.

                               /S/ CHRISTOPHER C. CONNER
                               Christopher C. Conner, Chief Judge
                               United States District Court
                               Middle District of Pennsylvania

Dated:       September 18, 2015

---

[11] Also pending is a motion (Doc. 36) *in limine* filed by Barber requesting that the court exclude at trial evidence pertaining to any claim on which the court might grant Subway's Rule 56 motion. The court will deny Barber's motion (Doc. 36) *in limine* as moot in light of the within resolution of Subway's motion.